**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

SHAWN JOHNSON,                      :
                                    :    Civil No. 07-1069 (WJM)
            Plaintiff,              :
                                    :
      v.                            :
                                    :        **O P I N I O N**
GEORGE HAYMAN, et al.,              :
                                    :
            Defendants.             :
_____:

**APPEARANCES:**

　　Shawn Johnson, Plaintiff, <u>pro se</u>
　　# 511841
　　East Jersey State Prison
　　Lock Bag R
　　Rahway, New Jersey 07065

**MARTINI**, District Judge

　　Plaintiff, Shawn Johnson, confined at the East Jersey State Prison in Rahway, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. Based on plaintiff's affidavit of indigence, the Court grants the application to proceed <u>in forma pauperis</u> and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

　　Having reviewed the Complaint, to identify cognizable claims pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the complaint will be dismissed, without prejudice. Plaintiff also filed a motion for a preliminary injunction (docket entry 3).

For the reasons set forth below, preliminary injunctive relief shall be denied.

## BACKGROUND

Plaintiff is currently serving his prison term at East Jersey State Prison ("EJSP"). He brings this civil rights action against the following defendants: George Hayman, Commissioner of the New Jersey Department of Corrections ("DOC"); Alfaro Ortiz, Administrator of EJSP; Mike Power, Associate Administrator of EJSP; Joseph Ring, Acting Chief Director of Operations; "Mainstream," Lieutenant; "Tennet," Sergeant; Richard Salort, Disciplinary Sergeant; Edward Olmo, Special Investigations Division; and Thomas Arnott, Senior Corrections Officer.

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

On November 26, 2006, an anonymous note was left with Plaintiff's cellmate, which prompted prison officials to place Plaintiff in Temporary Close Custody ("TCC").[1] Plaintiff did not know the reasons he was placed in TCC, and was not afforded any reports or information from defendants, even after filing an administrative remedy form. Plaintiff was afforded a hearing on December 20, 2006, at which time the hearing officer ordered his

---

[1] Plaintiff notes that he was placed in TCC as well as Protective Close Custody ("PCC"), stating that he was on "TCC/PCC status." It is unclear if Plaintiff's status was changed at some point from TCC to PCC. Plaintiff claims that the deprivations took place while in TCC/PCC status.

release from TCC.  Plaintiff was not released until December 22, 2006.  Thus, Plaintiff spent approximately 26 days in TCC/PCC.

While housed in TCC, Plaintiff was not permitted to partake in recreational activities of any sort.  Plaintiff states that the failure to partake in recreation caused him "physical and mental injuries," although he does not specify any personal injury from the deprivation.  Plaintiff states that he was in "lock-up" for 23 hours a day, and was only permitted to leave his cell to shower.  Also, Plaintiff states that while housed in TCC/PCC, inmates are not permitted to work at prison jobs or attend prison rehabilitation programs, must eat meals alone, and were subject to limits placed on the amount of visitors they can receive and their time in the law library.  Plaintiff does not specify any personal facts concerning these general deprivations.

Plaintiff seeks to sue the above-named defendants for refusing to change their policies and practices concerning inmates in TCC and PCC, and states that the defendants have violated his Eighth and Fourteenth Amendment rights.  He asks for declaratory and injunctive relief, as well as costs of suit.

## DISCUSSION

### A.   Standards for *Sua Sponte* Dismissal

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief, where the plaintiff is a prisoner or is proceeding in forma pauperis. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short,

plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.    Section 1983 Liability**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Analysis**

Construing the Complaint most liberally for the pro se plaintiff, the Court finds that Plaintiff alleges a denial of recreation claim, and a denial of due process claim with regard to his placement in TCC/PCC.

1.   Denial of Recreation

The denial of exercise or recreation can result in a constitutional violation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D. Pa. 1984). However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199.  Thus, a constitutional violation will

6

occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.  In order to demonstrate a deprivation of a constitutional right to recreation or exercise, plaintiff must still satisfy the Eighth Amendment standard and show deliberate indifference on the part of prison officials.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Here, Plaintiff has alleged that he was denied opportunities for recreation for a total period of 26 days while he was in confined in TCC.  He also does not allege any harm or injury as a result of this limited loss of recreational time, besides a blanket statement that he suffered "physical and mental injuries."  Plaintiff has not alleged facts indicating a prolonged deprivation of a constitutional magnitude, and Plaintiff's denial of recreation claim will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Further, liberally construing the complaint, Plaintiff contends the defendants' failure to follow the New Jersey Administrative Code concerning recreation violated his constitutional rights.  But violation of state law does not state a constitutional violation under 42 U.S.C. § 1983 .  See Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Green v. Patterson, 971 F. Supp. 891, 903 (D.N.J. 1997).  Plaintiff's claims against the defendants based upon alleged

violations of New Jersey law are subject to dismissal, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

    2.  <u>Denial of Due Process</u>

Plaintiff's due process rights are triggered by a deprivation of a legally cognizable liberty interest.[3] For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law." <u>Id</u>. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye v. Haymes</u>, 427 U.S.

---

[2] The Court notes that pursuant to the New Jersey Administrative Code, inmates in PCC should be given the opportunity for recreation outside of their cell and outdoors, "unless to do so would adversely affect the security and orderly operations of the correctional facility." <u>N.J.A.C.</u> § 10A:5-5.14. With regard to inmates in TCC, which is not to exceed 72 hours "unless exceptional circumstances . . . warrant extension of this time period," the Director of Custody Operations or designee should determine services afforded to the inmate. <u>See</u> <u>N.J.A.C.</u> § 10A:5-7.1 (a), (f).

[3] The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."

236, 242 (1976), quoted in Sandin, 515 U.S. at 480. See also Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest); Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.

Recently, the United States Supreme Court found that assignment to a state's supermax prison *did* post an "atypical and significant hardship" on the inmate "in relation to the ordinary incidents of prison life." See Wikinson v. Austin, 545 U.S. 209 (2005). However, in that case, the Court noted:

> For an inmate placed in [the facility], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement

9

>facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at [the facility] is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to [the facility].

Austin, 545 U.S. at 223-24 (internal citations omitted).

Here, Plaintiff's custody status and confinement in TCC/PCC for 26 days, did not trigger the protections of the Due Process Clause. Plaintiff's complaint fails to allege atypical or significant hardship with respect to Plaintiff's custody status, and does not approach the totality of deprivations noted in Austin. While Plaintiff was denied recreation, and conceivably would not able to work a prison job, attend programs, eat with other inmates, and would have limitations placed on the number of visitors he could see, and limited law library hours, these limitations do not impose the type of atypical and significant hardship in violation of the Due Process Clause. The time he spent in TCC/PCC was relatively short, 26 days. Thus, the temporary suspension, fully or partially, of these privileges does not state a deprivation claim of constitutional magnitude.

In Griffin, the Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be

10

considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. See Griffin, 112 F.3d at 708-09. In this case, Plaintiff has not alleged facts indicating a state law violation, as state law concerning TCC/PCC custody allows prison officials leeway in limiting these privileges. See N.J.A.C. § 10A:5-5.14 (recreation in PCC); § 10A:5-7.1(f) (services in TCC); § 10A:5-5.13 (correspondence, visits, and phone calls in PCC); § 10A:5-15(c)(educational opportunities in PCC); § 10A:5-5.17 (work opportunities in PCC).

Moreover, it appears that Plaintiff may be claiming that he was not afforded his basic procedural due process rights with respect to his placement in TCC/PCC. However, the Court of Appeals for the Third Circuit has held that an inmate's transfer to and confinement in administrative custody without a hearing prior to the transfer did not deprive him of a liberty interest, "and that he was not entitled to procedural due process protection." Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997). To invoke procedural due process protections, an inmate must show "that the prison's actions limited a protected liberty interest, and that procedures involved fell short of constitutional requirements." Shoates v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). "Normally, transfer from one level of custody in a prison to another does not impinge a constitutionally protected

11

interest." Bowen v. Ryan, 2006 WL 3437287 at *4 (M.D. Pa. Nov. 29, 2006)(Slip Copy)(citing Meachum v. Fano, 427 U.S. 215, 224 (1976) and Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  However, when an inmate demonstrates "atypical and significant hardship," notice of the charges against the inmate, and an opportunity to present his views to the official charged with deciding to transfer him to administrative custody, is required.  See Shoates, 213 F.3d at 145.

In this case, this Court has determined that Plaintiff has not alleged facts indicating that he was subjected to an atypical and significant hardship to trigger due process protections; however, even if he had, Plaintiff was afforded a hearing, albeit 24 days after his initial confinement in TCC/PCC, which was terminated in his favor and he was released to general population.

Accordingly, this aspect of Plaintiff's due process claim will be dismissed for failure to state a cognizable claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**D.   Amended Complaint**

Based on the foregoing, Plaintiff's complaint will be dismissed, without prejudice.  See Alston, 363 F.3d at 234 n.7 (stating that with a complaint that makes "little sense," District Court could have dismissed complaint without prejudice, to permit Plaintiff to amend the complaint to make it plain); see

also Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

The Court notes that "generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995)(quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)).  In this case, if Plaintiff can correct the deficiencies of his complaint, he may file a motion to reopen his case in accordance with the attached Order.

**E.    Preliminary Injunction**

In connection with complaint, Plaintiff also filed a motion for preliminary injunctive relief.  To secure the extraordinary relief of a preliminary injunction, Plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999).  A plaintiff must establish that all four factors favor preliminary relief.  See Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990).

In this case, Plaintiff has not demonstrated that preliminary injunctive relief is warranted, as he has not shown that he is likely to succeed on the merits of his case for the reasons stated in this Opinion. Since Plaintiff has been released from TCC/PCC custody, he has not demonstrated that denial of preliminary injunctive relief will result in irreparable harm. Nor has he demonstrated that granting the injunction would be in the public interest. Therefore, Plaintiff's request for preliminary injunctive relief will be denied.

## **CONCLUSION**

Based on the foregoing, Plaintiff's complaint will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff may correct the deficiencies in his complaint and file a motion to reopen within 45 days of the date of entry of the accompanying order. Plaintiff's motion for a preliminary injunction is denied.

                         s/William J. Martini

                         _____
                         WILLIAM J. MARTINI
                         United States District Judge

DATED: June 20, 2007